# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEWTON TENCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 3648 |
| | ) |
| ABBOTT LABORATORIES, | ) Wayne R. Andersen |
| | ) District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the court on defendant Abbott Laboratories' motion for summary judgment. For the reasons stated below, the motion for summary judgment [29] is granted.

## BACKGROUND

On August 12, 1996, Abbott Laboratories hired plaintiff Newton Tench as a programmer analyst. At the time he was hired, Tench was 53 years old. Sometime in 2000, Tench became a Level Three computer technician and worked in Abbott's computer support center, primarily developing scripts for the automated installation of software programs. Tench also was responsible for creating and maintaining a library of standard images for Abbott's desktop and laptop computers. As a Level Three technician, Tench reported to Virginia Easter who was a manager in the support center.

Easter gave Tench his 2000 performance review in which he received a "partially achieved expectations" evaluation. Based on Easter's meetings with Tench and her review of his performance, Easter concluded that Tench did not perform the scripting function well and that he had completed only a few of the scripts that had been assigned to him. Easter also determined that, although Tench had developed some of the images for the work station library, he had

failed to share the images with other technicians which resulted in unnecessary duplication of efforts.

After the 2000 performance review, Tench remained as a Level Three technician and continued with his scripting responsibilities. In December 2000, Robert Thomas became Tench's direct supervisor. After receiving complaints about Tench's performance and abilities, Thomas removed Tench from his scripting position in June 2001 and re-assigned him to a technician group which was managed by David Tuggle. In this new position, Tench was an end user specialist and performed the duties of a Level Two technician which included providing in-house computer desktop support. As a Level Two technician, Tench's duties included resolving Abbott employees' computer hardware and software problems. Work assignments were distributed to Level Two technicians by dispatchers from Abbott's help desk. The technicians were assigned to a particular queue, and a dispatcher from the help desk sent the assignments or tickets to the queue. When a technician worked on a ticket for a client, the client was billed for the technician's time. Technicians are required to bill 85 percent of their time to clients. Tench received a memorandum from Tuggle and Thomas setting forth this billing requirement.

Tench's first assignment in Tuggle's group was to provide computer support to the help desk. Within the first week of this assignment, Tench fell behind in his work and requests to desktop support became backlogged. Because of the backlog, Tuggle assigned another technician to assist Tench. The temporary technician helped alleviate Tench's backlog, but requests at desktop support again became backlogged soon after the temporary technician had left. Tuggle also received several complaints about Tench's response time to tickets. Also, as part of his assignment to the help desk, Tench was required to carry a pager and be on call 24 hours a day. After an issue arose concerning Tench's failure to respond to a page, Tuggle spoke

with Tench. Tench told Tuggle that he did not want to be on call 24 hours a day as the position required, so Tuggle assigned someone else to cover the night hours.

After approximately a month at this position, Tuggle removed Tench from desktop support based on his poor performance and failure to timely complete tickets that were assigned to him. Tench was re-assigned to another computer support area in which technicians provided remote computer assistance to clients. At this position, Abbott technicians averaged between 10 and 15 completed tickets per day. Tench, however, averaged only two tickets per day and remained in this position for less than one month. Tench again was reassigned to less demanding position, but still struggled to maintain his workload.

In August 2001, Tench began meeting with Tuggle weekly in an attempt to improve his work performance. Notwithstanding these meetings, Tench's performance did not improve, and he still was not meeting his supervisor's expectations. Tench received another "partially achieved expectations" evaluation for his 2001 year-end review. At that time, Tench was placed on a work improvement plan which was designed to closely monitor and improve his work performance.

In March 2002, Tench sent a letter to Abbott alleging age discrimination and then filed a charge of age discrimination with the Equal Employment Commission on May 8, 2002. The human resources department at Abbott learned of this charge no later than the first week of June 2002. After the 90-day work improvement plan expired on June 11, 2002, Abbott fired Tench. He was 59 years old at the time.

At the time of Tench's discharge, Aaron Folz, who is younger than Tench, was a Level Two technician under the same supervisory team as Tench. Folz also did not bill the required 85 percent billable hours during 2000 and 2001 and had incidents of tardiness. However, Folz

received good performance reviews and was not fired. On May 29, 2003, Tench filed this lawsuit alleging age and disability discrimination and retaliation. Tench, however, has abandoned his claims of discrimination based on a disability.

## DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party must present more than a scintilla of evidence to defeat summary judgment and may not rest upon "the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997). Indeed, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983).

Conclusory allegations will not defeat a motion for summary judgment. *See Thomas v. Christ Hosp. and Medical Center*, 328 F.3d 890, 893-94 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888-89 (1990)). "Speculation does not create a genuine issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). The fact-intensive nature of employment discrimination cases does not oblige the court to "scour the record" for factual disputes to help a plaintiff avert summary judgment. *See Greer v. Bd. of Ed. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

Local Rule 56.1 for the Northern District of Illinois requires that the parties support all disputed facts with specific references to the record and further emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of facts. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (all relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials"). The Seventh Circuit repeatedly has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the local rules and regularly upholds strict enforcement of Local Rule 56.1. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (citing cases); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

In this case, many of Tench's responses to Abbott's statement of facts are improper. Specifically, Tench includes legal conclusions and discussion of additional facts in many of his responses to Abbott's statement of facts. *See Servin v. GATX Logistics, Inc.*, 187 F.R.D. 561, 562 (N.D. Ill. 1999) (legal argument is improper in statement of material facts under local rules). Although many of Tench's responses to Abbott's statement of facts are improper, the court has reviewed and studied all of the materials submitted by both Tench and Abbott and has taken into consideration each party's statement of material facts and responses thereto in ruling on this motion.

### B. Age Discrimination Claim

Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff alleging age discrimination under the ADEA

can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th 2001). Tench has not produced any direct evidence of discrimination. Thus, the court proceeds under the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of age discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he performed his job satisfactorily and was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) another similarly-situated employee who is not a member of the protected class was treated more favorably. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

Abbott argues that Tench has failed to make a prima facie showing of discrimination. It is not disputed that Tench is older than 40 years old and that he was fired. However, Abbott disputes that Tench was performing his job satisfactorily and meeting its legitimate job expectations. The record is replete with examples of Tench's failure to meet Abbott's job expectations throughout the last two years of his employment at Abbott. He received poor performance reviews in 2000 and 2001. In more than one position, Tench struggled to complete assignments that were given to him and was not able to maintain the level of productivity expected from Abbott's computer technicians. Furthermore, the record shows that Abbott re-assigned Tench to different positions in an attempt to find him a job at which he could succeed. However, Tench was unable to meet the requirements of any positions to which he was assigned, and Abbott ultimately fired him.

Tench challenges Abbott's job expectations and argues that Abbott's expectations were not reasonable and that he was performing his job satisfactorily. Reasonableness is defined by the Seventh Circuit as "objectively reasonable" and "adequately communicated to the employee." *Mills v. First Federal Savings and Loan Assoc. of Belvidere*, 83 F.3d 833, 844, n. 7 (7th Cir. 1996) (citing *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir. 1986)). However, these assertions without factual support simply are not enough to overcome Tench's burden. "An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Tench cannot establish a disputed issue of fact based upon his own assertions that he was performing his job well or that Abbott's expectations were unreasonable. Moreover, the record does not support Tench's claim that Abbott's expectations were unreasonable. Tench has failed to point to any specific instances, which are supported by the record, in which Abbott's expectations were not legitimate. In fact, the record shows that Abbott attempted to work with Tench to find him a position within the company at which he could succeed or, at a minimum, perform reasonably well. Based on the record before this court, Tench has failed to demonstrate that he was performing his job satisfactorily and was meeting Abbott's legitimate expectations.

Tench also has failed to demonstrate that other similarly-situated employees who are not members of the protected class were treated more favorably. In order to meet his burden on this fourth element of an age discrimination claim, Tench must show that there is an individual or individuals directly comparable to him in all material aspects who received more favorable treatment. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002). Although Tench has claimed that younger employees, specifically Aaron Folz, were not subject to such

7

actions, his conclusory allegations are insufficient. "[C]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). Tench's testimony without corroborating evidence amount to nothing more than self-serving, conclusory allegations and should not be considered as evidence. *See Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 615 (7th Cir. 2001) (plaintiff is not permitted to submit self- serving conclusory testimony or "uncorroborated generalities" to satisfy evidentiary burden in a Title VII claim); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999) (court must disregard on summary judgment self-serving statement without factual support in the record).

The record shows that Tench and Folz both were Level Two technicians. However, Folz received higher performance reviews than Tench. Although Folz also did not bill 85 percent of his time to clients, the record shows that Folz was given some unique assignments and responsibilities other than his client billable assignments which were not reflected in the total billable hours. Tench has not presented any evidence that similarly-situated younger employees were treated more favorably in the assignment of responsibilities, in the evaluation of job performance, or in being place on a work improvement plan. Abbott does not dispute that Tench was older than most of the other Level Two technicians. However, the record shows that there was another Level Two technician who was 59 years old. It also is important to note that Tench was hired by Abbott at the age of 53 and worked for almost 6 years before he was discharged. Based on the record before us, Tench has failed to establish the fourth element required to establish a prima facie case of discrimination.

Assuming *arguendo* Tench could establish a prima facie case of age discrimination, the burden would shift to Abbott to provide a legitimate, non-discriminatory reason for its

employment decision. *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002). The record plainly reflects Abbott's concerns about Tench's poor performance. Tench's failure to satisfy Abbott's expectations for his job performance supplies Abbott with a legitimate, non-discriminatory basis for discharging him. Since Abbott has provided a rational, non-discriminatory reason for its action, the burden then shifts back to Tench to show that Abbott's stated reason is a pretext for discrimination. *See Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002). Tench may satisfy this element with evidence that Abbott was more likely than not motivated by a discriminatory reason or that its explanation is not worthy of credence. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002) (to show pretext, plaintiff bears the burden of demonstrating that the employer's ostensible justification for its decision is unworthy of credence).

The Seventh Circuit repeatedly has stated that courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 396 (7th Cir. 1998). Instead, courts examine the record to determine if there is any evidence that the employer is lying to cover up illegal discrimination. *See Paluck v. Goodong Rubber Co.*, 221 F.3d 1003, 1012-13 (7th Cir. 2000). The record plainly reflects Abbott's concerns about Tench's unsatisfactory work performance. Furthermore, Tench's failure to show that he was meeting Abbott's expectations supplies Abbott with a legitimate, non-discriminatory basis for discharging him. There is nothing in the record to indicate that Abbott is lying to cover-up some illegal discrimination. Thus, Tench has failed to demonstrate that Abbott's proffered reason for firing him is a pretext for discrimination.

In sum, Tench has failed to establish a prima facie case of age discrimination and cannot demonstrate that Abbott's proffered reason for firing him is a pretext for any discriminatory

9

intent particularly in light of the fact that Tench was hired at the age of 53. In addition, Abbott gave Tench ample opportunity to improve his performance and re-assigned him to at least four different positions in an attempt to find Tench a job at which he could succeed before Abbott determined that his work performance did not merit continued employment.

### C. Retaliation Claim

Tench also claims that Abbott discharged him in retaliation for filing charges of discrimination with the EEOC. In the absence of direct evidence of retaliation, a plaintiff must demonstrate that: (1) he engaged in a statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse action from the employer; and (4) he was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Abbott does not dispute that Tench engaged in statutorily protected activity by filing a claim of discrimination with the EEOC or that his discharge constitutes an adverse employment action. Rather, Abbott argues that Tench's retaliation claim fails because Tench was not performing his job according to Abbott's expectations and he cannot rebut the fact that Abbott would have discharged him anyway.

The record shows that Abbott discharged Tench because he was not performing his job satisfactorily, and Tench's failure to show that he was meeting Abbott's legitimate expectations supplies Abbott with a legitimate, non-discriminatory and non-retaliatory basis for discharging him. It is not disputed that Abbott transferred Tench on numerous occasions in an attempt to find a position for him and then put him in a work improvement plan until he was discharged.

Tench failed to show that his age was a motivating factor in Abbott's decision to place him in a work improvement plan and ultimately in its decision to discharge him. Moreover,

10

Tench cannot show that any similarly-situated employees were treated better. There is no evidence in this record from which this court could conclude that similarly-situated younger employees were treated better. There is no other younger employee who was not meeting Abbott's expectations, while on a work improvement plan, and who was not discharged. Thus, Tench has failed to rebut the fact that Abbott would have discharged him anyway notwithstanding the filing of his EEOC claim, and the court concludes that Tench has failed to demonstrate that Abbott's actions were pretextual, discriminatory or retaliatory.

## CONCLUSION

For all of the foregoing reasons, defendant Abbott's motion for summary judgment [29] is granted.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 23, 2006